IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| William Harris, ) | Civil Action No. 8:08-1675-DCN-BHH |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, William Harris, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 50 years old on the alleged onset date of March 23, 2003. (R. at 23.) He has a ninth grade education and past relevant work as a latchman or longshoreman. (R. at 248, 67.) The plaintiff alleges he became disabled due to a right arm injury and right foot pain. (R. at 66, 152.)

The plaintiff protectively filed an application for SSI on February 23, 2005 (R. at 234), and an application for DIB on March 7, 2005 (R. at 29). His applications were denied in initial and reconsidered determinations. (R. at 28-29, 229, 234). After a hearing (R. at 245-

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

60), in a decision dated May 11, 2007, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (R. 14-25.) As the Appeals Council denied the plaintiff's request for review (R. at 5-8), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> (2) The claimant has not engaged in substantial gainful activity since March 23, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: right arm pain due to chronic tendonitis (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with sit/stand option at will, due to right ankle pain. He can lift up to 20 pounds occasionally and 10 pounds frequently, using one upper extremity as a helper only. He can sit for 2 hours and stand and/or walk for 6 hours each in an 8-hour workday.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7) The claimant was born on May 24, 1953, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR. 404.1563 and 416.963).
>
> (8) The claimant has a limited education and is able to communicate in English (20 CFR. 404.1564 and 416.964.

2

(9) Transferability of job skills is not an issue in this case because claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR. 404.1560(c), 404.1566, 416.960(c) and 416.966).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2003, through the date of this decision (20 CFR. 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

3

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the

4

Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find his foot impairment "severe;" (2) finding that an at-will sit/stand option was compatible with the demands of "light" work; (3) failing to accord the opinion of his treating physician controlling weight; and (4) failing to include certain impairments in the hypothetical to the vocational expert ("VE"). The Court will address each objection in turn.

**I.    Severe Impairment**

At step two of the sequential evaluation process, the ALJ found that plaintiff's right arm impairment was "severe" within the meaning of 20 C.F.R. § 404.1520(c). The plaintiff argues that the ALJ erred in not also finding that his alleged right foot impairment was severe. (Pl. Brief at 10-12.)

To establish a severe impairment, a claimant must provide medical evidence that her impairments significantly limit her ability to perform "basic work activities." *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 146 n.5 (1987) ("An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"; it is Plaintiff's burden to show she has a severe impairment); 20 C.F.R § 404.1520(c). The plaintiff's burden to show a severe impairment is not an exacting one. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect

5

on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). In short, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd 2004).

Notwithstanding, the plaintiff has not met this light burden. The plaintiff relies all but exclusively on the ALJ's decision to recognize a sit/stand option in his RFC assessment as evidence that the impairment must be severe. Of course, simply because the ALJ ultimately extended to the plaintiff the benefit of the doubt as to that impairment and some of its alleged effects, does not mean that the ALJ was required to find it severe in the first instance. In fact, as the defendant emphasizes it was the ALJ's responsibility to consider the effect of all of the plaintiff's impairments, even if they were non-severe. *See* 20 C.F.R. § 404.1523; (R. at 20-21). So the sheer fact that the ALJ credited the limitation does not make the impairment severe.

The plaintiff also summarily notes that a Dr. Howard Brilliant described the impairment as severe. (R. at 172.) In contrast, the defendant emphasizes that apart from one visit to a Dr. John Rowe in November 2003, the plaintiff did not seek treatment for his right foot until June 2006 (Tr. 163, 172). *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding that the claimant's testimony regarding her impairments was not credible where, among other factors, she had not seen a doctor for her allegedly constant pain in over a year, and made only one trip to the emergency room for her tension headaches). The only other occasion on which the plaintiff discussed his right foot with a doctor was during a December 2005 consultative examination with a Dr. Daniel Bates. (R. at 152.) The plaintiff told Dr. Bates that he could walk for six hours, stand for four hours and sit for several hours. *Id*. Upon examination, Dr. Bates noted that the plaintiff's gait was normal, including heel-toe walking. (R. at 153.) His right leg was normal in appearance, with no tenderness to palpation, full range of motion, full 5/5 strength, and normal muscle bulk. (R.

at 153.) The evidence shows that, during the relevant time period, the plaintiff ran, took walks and drove. (R. at 162, 164, 257.) The ALJ specifically noted, in regards to the plaintiff's foot injury, that there were no signs of motor deficits, sensory loss or reflex changes, and that the injury to the plaintiff's foot had not prevented the plaintiff from working for the past 25 years. (R. at 22.)

The plaintiff has not explained impairments significantly limit her ability to perform "basic work activities." *See Bowen*, 482 U.S. 137, 140-42, 146 n.5. The plaintiff has not listed any work activities and certainly has not explained how the evidence suggests he cannot perform them to any particular degree as a result of his foot impairment. The fact that he has some evidence of severity is of no moment. *See Blalock*, 483 F.2d at 775. As recited, the ALJ had substantial evidence to conclude as he did and the Court will not disturb his decision.

Moreover, the plaintiff has not explained what additional limitations a "severe" foot injury would have added to the RFC. As the plaintiff himself admits, the ALJ incorporated a sit/stand limitation. The plaintiff has not indicated what more a characterization of "severe" at step two would have dictated in regards to limitations. Any error, therefore, in that determination is harmless, as the defendant complains. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same

conclusion notwithstanding his initial error").

## II.  Residual Functional Capacity

The ALJ found that the plaintiff had the residual functional capacity to perform a significant range of *light* work. Specifically, the ALJ found that he had an RFC to perform light work with a sit/stand option at will and that he was capable of lifting 20 lbs. occasionally and 10 lbs. frequently, with the use of one upper extremity as a helper only. (R. at 20.) The ALJ further found that the plaintiff was capable of sitting for 2 hours and standing and/or walking for 6 hours each in an 8-hour workday. *Id*.

The plaintiff, however, asserts that an at-will sit/stand option is not compatible with light work. (R. at 13-14.) The plaintiff contends that the option to sit for an entire workday would prevent the plaintiff from performing the "good deal of walking or standing" required by work at the light exertional level. *See* 20 C.F.R. § 404.1567 (b). The Court agrees with the defendant, however, that the issue is a vocational one, on which the ALJ may seek expert testimony. *See* SSR 83-12, 1983 WL 31253, at *4 (stating that, in cases of unusual limitation on the ability to sit or stand, the ALJ should consult a vocational expert to clarify the implications for the occupational base); *Walls v. Barnhart*, 296 F.3d 287, 291-92 (4th Cir. 2002) (finding that the ALJ was entitled to rely on the vocational expert's subsequent testimony that the claimant could perform light and sedentary work, because the ALJ consulted the expert about the implication of the at-will sit/stand option on the occupational base).

In the present case, the ALJ properly consulted a vocational expert, who expressly testified that an individual with the plaintiff's residual functional capacity – including the need to sit or stand at will – could perform the light jobs of carton packer, tobacco sampler and storage facility clerk. (R. at 259-60.) The vocational expert further testified that he had personally observed these light jobs performed in a manner compatible with a sit/stand option. *Id*. The ALJ, therefore, properly relied on the vocational expert's testimony in finding that the plaintiff could perform a substantial number of jobs existing in the national economy. *See Walls*, 296 F.3d at 291-92 ; *see also Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (upholding an ALJ's finding that a claimant who had the residual functional capacity to perform light work with a sit/stand option was not disabled).

### III. Treating Physician

The plaintiff also complains that the ALJ failed to give the opinion of his treating physician, Dr. Howard Brilliant, controlling authority. It is true that the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in the record.  *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).   A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions.  These are administrative findings reserved for the Commissioner's determination.  SSR 96-2p.  Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  *See Blalock*, 483 F.2d at 775.

      As an initial matter, the Court disagrees with the plaintiff that the ALJ was not clear in the weight accorded Dr. Brilliant's opinion.  The ALJ specifically found that "Dr. Brilliant's notes fail to support his assessment of the claimant's limitations."  (R. at 22.)  As everyone recognizes, the opinion was not given controlling authority, but some of the recommended limitations were adopted.  But, the ALJ did not simply stop at the conclusion that "Dr. Brilliant's office notes fail to support his assessment of the claimant's limitations."  *Id*. The ALJ's treatment was likely not as consistent with the clarity requirements of SSR 96-2 as preferred but the Court does not believe remand is in order.  This is particularly true insofar as the ALJ cited substantial evidence as to why he did not extend controlling weight to Dr. Brilliant's opinion but still reasonably included some of the recommended limitations.

      To the issue of whether the ALJ had substantial evidence upon which to discount Dr. Brilliant's opinion, the Court believes he did.  As the ALJ detailed (R. at 22), Dr. Brilliant repeatedly released the plaintiff to return to his medium-exertion job as a longshoreman, most recently in January 2005 (R. at 177, 185, 189, 218, 223.)  *See Johnson*, 434 F.3d at 656 n.8 (finding that substantial evidence supported a finding that a treating physician's opinion was unreliable where, among other factors, the treating physician previously stated

that the claimant could perform light work and would be a good candidate for vocational rehabilitation); *see also* 20 C.F.R. § 404.1567(c) (observing that, if someone can do medium work, he can also do light work). The plaintiff returned to Dr. Brilliant in April 2005. (R. at 174.) The plaintiff told Dr. Brilliant that he retired in January 2005, and asked the doctor to complete a disability form. (R. at 173-174.) When Dr. Brilliant next examined the plaintiff, in June 2006, he observed that the plaintiff's arms were unchanged, and neurological testing failed to reveal any abnormalities. (R. at 22, 172); *see Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1990) (finding that the ALJ properly rejected a treating physician's conclusory assessment where the physician's it was not supported by his own treatment notes). The ALJ noted that medical tests and imaging (including tests and imaging ordered by Dr. Brilliant) consistently failed to show bone, soft tissue or neurological abnormalities in Plaintiff's right arm. (R. at 21, 77-79, 91, 103, 189, 218.)

The plaintiff does not address any of the specific reasons cited by the ALJ for discounting Dr. Brilliant's opinion. Instead, the plaintiff simply emphasizes evidence in Dr. Brilliant's notes, which he believes is supportive of his ultimate disability opinion. The plantiff notes that examinations by Dr. Brilliant were positive for swelling and that in June 2006, the plaintiff exhibited an altered gait of the right lower extremity. The plaintiff also highlights a 2004 MRI which was positive for inflammation in the bursa between the extensor carpi radialis brevis and the logus tendons. (R. at 91, 112.) The plaintiff does not explain how this evidence supports a finding of disability. More critically, none of this evidence stands in contradiction to the reasons cited by the ALJ as explained above.

Again, the fact that the plaintiff can identify some evidence which might reasonably lead to a different conclusion than the ALJ is immaterial. The ALJ cited reasons for discounting Dr. Brilliant's opinion and those reasons have not been specifically refuted.

The ALJ's treatment of Dr. Brilliant's opinion was less than thorough. In almost every decision, the Court would like to see a more clear annunciation of the ALJ's rationale.

Notwithstanding, the ALJ cited substantial evidence and the Court is reticent to reject it. The standard is fundamentally deferential.

## IV. Hypothetical to Vocational Expert

Lastly, the plaintiff contends that the hypothetical to the vocational expert was necessarily deficient insofar as it did not include all of the impairments recommended by Dr. Brilliant. Because the Court has concluded that the ALJ was not in error to deny Dr. Brilliant's full opinion controlling authority, no error in the resulting hypothetical is committed by not including all limitations recommended by that physician. Only limitations which are supported by substantial evidence should be included in the hypothetical. *See Lee v. Sullivan*, 945 F.2d 687, 692, 693-694 (4th Cir. 1991) (holding that the ALJ was not required to accept a limitation which the claimant's counsel introduced in a hypothetical question to the vocational expert where the limitation "was not sustained by the evidence, and the vocational expert's testimony in answer to the question was without support in the record").[2]

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

November 13, 2009
Greenville, South Carolina

---

[2] The plaintiff also contests the vocational expert's testimony as to the store clerk position, which he identified as work the plaintiff could perform. Any error in that testimony is irrelevant because the VE had recommended the availability of two other jobs, which the plaintiff has not disputed.